Ray L. Wong (SBN 84193)
**DUANE MORRIS LLP**
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
E-mail:rlwong@duanemorris.com
Phone: 415-957-3149
Fax: 415-520-6907

Lewis R. Olshin (Pro Hac Vice to be filed)
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
E-mail:olshin@duanemorris.com
Phone: 215-979-1129
Fax: 215-689-3622

Attorneys for Plaintiff
CENTURY INDEMNITY COMPANY, as successor to
CCI INSURANCE COMPANY, as successor to
INSURANCE COMPANY OF NORTH AMERICA

# IN THE UNITED STATES DISTRICT COURT FOR THE

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTURY INDEMNITY COMPANY, as successor to CCI INSURANCE COMPANY, as successor to INSURANCE COMPANY OF NORTH AMERICA<br><br>Plaintiff,<br><br>v.<br><br>MATSON TERMINALS, INC., and MATSON NAVIGATION COMPANY, INC.,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>Judge:<br>Complaint Filed:   April 29, 2014 |

INA'S COMPLAINT
CASE NO:                                                                                               I:\D0883-00337 Ace-Matson\Complaint.docx

Plaintiff Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("INA"), files this Complaint against Defendants MATSON TERMINALS, INC. AND MATSON NAVIGATION COMPANY, INC., (hereinafter "Matson") as follows:

## I.   NATURE OF THIS ACTION

1. This action involves an actual controversy and seeks a declaratory judgment that the INA excess workers' compensation insurance policy issued to Matson (defined hereinafter as the "Excess Policy"), who was at all times relevant to this Complaint for Declaratory Relief a self-insured employer under the Longshore and Harbor Workers' Compensation Act ("LHWCA" or "Act"), 33 U.S.C. §§ 901 *et seq.*, does not provide coverage for the Special Fund Administrative Assessments (the "Special Fund Assessments") paid by Matson to the United States Department of Labor pursuant to the Act.  *See e.g., Nat'l Steel & Shipbuilder Co. v. Century Indem. Co.*, 959 F. Supp. 2d 1264 (S.D. Cal. 2013).

2. This action stems from two August 2013 demands made by Matson that INA reimburse it for twenty-five years of Special Fund Assessments that Matson paid to the United States Department of Labor on account of certain former employees of Matson who were injured during the course of their employment.  After Matson paid each employee 104 weeks of benefits, each employee was subsequently covered by a federally-enacted workers' compensation fund known as the Special Fund, which provides payments to injured workers for certain covered injuries.  *See* 33 U.S.C. §§ 8(f).  Despite paying these administrative fees for nearly twenty-five years, Matson has alleged that INA is responsible for reimbursing Matson for these payments under the Excess Policy INA issued to Matson in 1980.  On November 25, 2013 Matson amended or supplemental its August 2013 demands and "re-characterized" these administrative fees as "Future Permanent Compensation Payments" (the Letters from Matson are collectively referred to hereinafter as the "Demand"). Matson's Demand is not covered under the Excess Policy.  *See e.g., Nat'l Steel & Shipbuilder Co.*, 959 F. Supp. 2d 1264.

3. INA therefore seeks declaratory judgment of this actual controversy pursuant to 28 U.S.C. § 2201 *et. seq.*

1

## II. THE PARTIES

4. Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America, is a Pennsylvania corporation with its principal place of business located at 436 Walnut Street, Philadelphia, Pennsylvania 19106.

5. At all times relevant to this Complaint, INA was a Pennsylvania corporation with its principal place of business located at 436 Walnut Street, Philadelphia, Pennsylvania 19106.

6. Matson is a Hawaii corporation, with its principal place of business located at 555 12th Street, Oakland, California 94607. At the time the Excess Policy was negotiated and issued, Matson was a California corporation with its headquarters and principal place of business in San Francisco, California. Matson further has personal contacts within this district sufficient to subject it to the jurisdiction of this district.

## III. JURISDICTION

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

8. The amount in controversy is in excess of $75,000 exclusive of interest and costs.

## IV. INTRADISTRICT ASSIGNMENT / VENUE

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

10. Intradistrict assignment is proper in the San Francisco Division of this Court. *See Insurance Company of North America v. Matson Terminals, Inc.*, No. 13-cv-08958-SJO-FFM (C.D. Cal.), Doc. No. 27, Page ID #:603-604, dismissing INA's previous complaint for declaratory relief in the United States District Court for the Central District of California because venue is properly in San Francisco.

## V. PROCEDURAL HISTORY

11. This litigation began on December 2, 2013, when Matson filed a petition to compel arbitration ("Matson's Petition") in the United States District Court for the Northern District of California ("Northern District"). *See Matson Terminals, Inc. v. Insurance Company of North America*, No. 13-cv-05571-LB (N.D. Cal.), Doc. No. 1.

12. Matson's Petition was based on Matson's incorrect and overly broad reading of an arbitration clause within the Excess Policy.

13. Two days later, on December 4, 2014, INA filed a complaint for declaratory judgment ("INA's Central District Complaint") in the United States District Court for the Central District of California ("Central District").  *See Insurance Company of North America v. Matson Terminals, Inc.*, No. 13-cv-08958-SJO-FFM (C.D. Cal.), Doc. No. 1.[1]

14. INA's Central District Complaint was very similar to this present complaint. Primarily, INA sought a declaration from the Central District court that, under the Excess Policy, INA did not owe Matson insurance coverage for Special Fund Assessments.

15. INA subsequently moved to dismiss Matson's Petition.

16. Matson likewise moved to dismiss, stay, or transfer INA's Central District Complaint. Among other things, Matson argued that this dispute should be venued in the Northern District, not the Central District.  In support of this argument, Matson noted that the Excess Policy was negotiated and delivered in the Northern District in San Francisco.  Matson further noted that its headquarters were in San Francisco at the time.

17. On March 21, 2014, the Hon. Laurel Beeler denied Matson's Petition and entered judgment in favor of INA.  *See Matson Terminals, Inc. v. Insurance Company of North America*, No. 13-cv-05571-LB (N.D. Cal.), Doc. No. 34.  Thus, the parties' dispute about the Excess Policy's arbitration clause is fully resolved.

18. On April 10, 2014, the Hon. S. James Otero dismissed INA's Central District Complaint for improper venue.  *See Insurance Company of North America v. Matson Terminals, Inc.*, No. 13-cv-08958-SJO-FFM (C.D. Cal.), Doc. No. 27.  Among other things, Judge Otero noted that the Excess Policy was negotiated and delivered in San Francisco and that Matson's headquarters were in San Francisco.

19. Although Judge Otero dismissed INA's Central District Complaint for improper venue, he did not transfer the case to the Northern District.  Rather, Judge Otero simply terminated

---

[1] INA's Central District Complaint was captioned with only "Insurance Company of North America" as the plaintiff.  This complaint is captioned with a more complete corporate history for INA: "Plaintiff Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America."  This complaint will refer to "INA" throughout as reflected in the Central District Complaint as opposed to Century Indemnity Company.

the proceedings. Thus, the coverage issues raised in INA's Central District Complaint have not been resolved and are not presently pending before any court.

20. Accordingly, INA now files this complaint in the Northern District to finally resolve the parties' dispute over insurance coverage for Special Fund Assessments.

## VI. FACTUAL BACKGROUND

### A. Matson's Self-Insurance and The Excess Policy

21. Matson is an international shipping company that provides ocean shipping and multimodal transportation services to the North American Market.

22. For all times relevant to this Complaint for Declaratory Relief, Matson qualified as a self-insured employer under the LHWCA.

23. The LHWCA is a federal workers' compensation system for employees disabled in the course of maritime employment.

24. Pursuant to the LHWCA, employers are required to secure the payment of compensation either by obtaining approval to operate as a self-insured employer or by purchasing authorized workers' compensation insurance for their exposure under the LHWCA. 33 U.S.C. § 932. Generally, the LHWCA requires employers or their insurers to pay all disability compensation owed to an injured employee pursuant to the provisions of the LHWCA.

25. Matson chose to be self-insured under the Act.

26. To cover a portion of its potential liability under the Act, Matson purchased and INA issued an Excess Workmen's Compensation And Employers' Liability Policy (the "Excess Policy"), to Matson with effective dates of January 1, 1980 to January 1, 1981. A true and correct copy of the Excess Policy is attached hereto as **Exhibit A**.

27. The Excess Policy was subsequently renewed pursuant to Endorsement No. 9 with effective dates of January 1, 1981 to January 1, 1982.

28. As relevant here, the Excess Policy provides that Matson's retained limit is $250,000 for each accident. *See* **Exhibit A**, page 1 at Item 5; page 2 at II. Limit of Liability-Retained Limit.

29. As relevant here, the Excess Policy provides that INA will cover "excess loss" incurred by Matson, above the $250,000 Retained Limit, that Matson paid directly to a claimant in

4

the form of compensation and other benefits, as follows:

> INA hereby agrees to indemnify the Insured against excess loss as a result of injury (1) by accident occurring during the policy period or (2) by disease caused or aggravated by exposure of which the last day of the last exposure in the employment of the Insured to conditions causing the disease occurs during the policy period, subject to the limitations, condition and other terms of this policy which the Insured may sustain because of:
>
> (a) compensation and other benefits required of the Insured by the workers' compensation law; and  . . .

**Exhibit A**, page 2 at I. Workers' Compensation Employers' Liability.

30. The Excess Policy further provides that INA will only be liable for ultimate net loss in excess of the $250,000 Retained Limit, and only up to the limit of the Excess Policy, which is $5,000,000:

> INA's limit of liability under this policy shall be only for the ultimate net loss in excess of the Insured's retained limit stated in the declarations and then only for an amount not exceeding the policy limit stated in the declarations; provided that the retained limit and INA's limit of liability shall apply to:
>
> (a)     bodily injury by accident, including death resulting therefrom, sustained by one or more employees in each accident, or
>
> (b)     bodily injury by disease, including death resulting therefrom, sustained by each employee.
>
> The inclusion herein of more than one Insured shall not operate to increase the retained limit or INA's limit of liability.

**Exhibit A,** page 2 at II. Limit of Liability – Retained Limit.

31. The term "Ultimate Net Loss" as used in the Excess Policy,

> means the sum actually paid in cash in the settlement or satisfaction of losses for which the insured is liable, either by adjudication or compromise with the written consent of INA, after making proper deductions for all recoveries, but shall exclude all salaries of employees and office expenses of the insured incurred in investigation, adjudication and litigation.

**Exhibit A**, page 3 at 4. Definitions (d) Ultimate Net Loss.

32. Additionally, an endorsement to the Excess Policy, entitled the Revised Annuity

Endorsement ("Endorsement No. 6"), subject to the terms and conditions of the Excess Policy, provides for an "Election of Options" at paragraph 1 of Endorsement No. 6 and for an Annuity Value or Value of the Claim at paragraph 2 of Endorsement No. 6.  Consistent with the Insuring Agreement of the Excess Policy, the Annuity Value or Value of a Claim is based on "compensation amounts" and "medical benefits", such values to be "established as of the time that compensable permanent disability status has been finally established."  **Exhibit A**, Endorsement No. 6 at ¶¶ 1 and 2.  Based on Matson's Demand compensable disability status was finally determined for each Claimant in the early 1980s.

### B. The LHWCA "Special Fund"

33. In certain circumstances, the LHWCA relieves employers of the obligation to pay injured employees, and provides for payments to injured employees from a "Special Fund" pursuant to 33 U.S.C. §§ 8(f), 944(a).

34. Where a pre-existing condition contributes to an employee's post-injury permanent disability (referred to as a "second injury"), section 8(f) of the LHWCA limits an employer's liability for post-injury permanent disability payments to 104 weeks.

35. After the 104 weeks have elapsed, the Special Fund pays the remaining permanent disability benefits owed to the employee.  33 U.S.C. § 944(a).

36. Until 1972, the Special Fund was financed through: (1) payments by employers or insurance carriers in death cases where there was no eligible survivor; (2) fines and penalties levied under the LHWCA; and (3) investment income on the unused balance of the Special Fund.

37. In 1972, to increase the revenue of the Special Fund, Congress instituted an annual assessment which was to be paid by self-insured employers—or insurance companies, where an employer was not self-insured—to the Department of Labor (the "DOL").  As applicable for the policy years relevant here, each carrier's or self-insurer's assessment was calculated based upon its share of direct indemnity and medical payments paid in the prior year divided by the total of direct indemnity and medical payments made by all payers under the Act during the preceding calendar year, multiplied by the amount projected to be needed by the Fund for the current calendar year.

38. The Special Fund Assessments are administrative charges calculated pursuant to a

formula.

39. Prior to 1984, the formula did not take into account the number of disabled employees receiving benefits from the Special Fund that were associated with each employer.

40. In 1984 Congress revised the formula used to determine an employer's Assessment under the Special Fund.

41. After 1984 the formula for Special Fund Assessments is based on three factors: (1) the employer's share of workers' compensation payments in the preceding calendar year; (2) the share of Section 8(f) costs attributable to the employer during the preceding calendar year, and (3) the total needs of the Fund for the current calendar year.  33 U.S.C. § 944.

42. The Special Fund Assessments, however calculated, are administrative expenses charged to employers as approved self-insurers under the LHWCA.  They are not due as a result of adjudicated or settled liability in regard to injuries sustained by employees covered by the Act.  *See e.g.*, *Nat'l Steel & Shipbuilder Co.*, 959 F. Supp. 2d 1264.

**C.     Matson's Demand**

43. On August 6, 2013, Matson, made a demand upon INA for the amounts that Matson had paid to the DOL in Special Fund Assessments since 1984 (the "Demand").  *See* Letter from Philip L. Pillsbury, Jr. and Richard D. Shively to Kathleen McCreary, dated August 6, 2013, a true and correct copy of which is attached hereto as **Exhibit B**.

44. In the Demand, Matson submits an indemnity claim to INA based on the amount which Matson states it paid in Special Fund Assessments on account of thirteen former Matson employees (the "Claimants") with various dates of injury between January 18, 1980 through August 9, 1981, all of whom, either currently or at one time, received benefits from the Special Fund.[2]

45. In the Demand, Matson alleges that each of the Claimants were employees of Matson who between 1980 and 1981 suffered an injury during the effective dates of the Excess Policy which

---

[2] Pursuant to a subsequent letter dated August 30, 2013, Matson revised its purported indemnity claim against INA by excluding from Matson's claim amounts related to Special Fund Assessments paid on account of one of the thirteen claimants, Randolph Kim-seu.  Matson has not yet responded to INA's request for confirmation that Matson intends to withdraw in total any and all claims for indemnity related to this Claimant.  Accordingly, for purposes of this Complaint, INA will assume that Randolph Kim-seu's claim remains at issue.

7

injuries resulted in each employee's placement in the Special Fund due to a compensable permanent total disability.

46. Of the thirteen Claimants, Matson recently reported that six are deceased with dates of death spanning a period as early as March 15, 1998 and no later than December 9, 2011. It appears, however, that two additional Claimants are deceased, bringing the total to eight.[3] With respect to the deceased Claimants, Matson's demand indicates that "Matson is (so far) incurring no further losses." *See* **Exhibit B.** Notwithstanding the death of these eight (8) Claimants Matson notified INA that it seeks Future Permanent Compensation Payments (the re-characterized assessments) and in some cases Future Medical Benefits.

47. Matson alleges that the remaining five (5) living Claimants continue to receive benefits from the Special Fund. On account of the five (5) living Claimants, Matson also alleges that it may continue to incur additional losses, in the form of Special Fund Assessments (or as re-characterized Future Permanent Compensation Payments), for which it intends to seek reimbursement from INA.

48. In the Demand, Matson alleges that the payments of direct statutory benefits paid by Matson to each Claimant, and the amount of Special Fund Assessments paid by Matson to the DOL "on account of each Claimant" should be aggregated such that Matson's total payments on behalf of each Claimant meet the $250,000 Retained Limit and trigger INA's obligation to reimburse Matson for amounts paid over the Retained Limit. *See* **Exhibit B.**

49. Matson's Demand establishes that it has not satisfied the $250,000 Retained Limit for each accident for any of the Claimants based on the amount of direct statutory benefits Matson has paid to each Claimant.

50. Therefore, based on the amount of direct statutory benefits Matson paid to each Claimant, there is no reimbursement obligation under the Excess Policy because the Retained Limit

---

[3] The following Claimants were deceased as of the following dates: Catt (2/14/2002); Duauchelle (7/29/2004); Hyde (8/14/2006); Musumeci (12/9/2011); West (3/15/1998). *See Insurance Company of North America v. Matson Terminals, Inc.*, No. 13-cv-08958-SJO-FFM (C.D. Cal.), Doc. No. 14-7, at Page ID #: 291, 294, 297, and 299. It also appears that the following Claimants are deceased: Rudy Ceballos 8(f) assessments ended as of 2000; Harry Perry 8(f) assessments ended as of 2009; and Walter Stayart 8(f) assessments ended as of 2003. *See id.* at Page ID #: 196, 235, and 244.

for each Claimant has not been satisfied.

51. As of the date of the Demand, Matson states that it has paid a total of $6,159,473.27 in Special Fund assessments to the DOL on account of all of the Claimants.

52. As of the date of the Demand, Matson states it has additionally paid a total of $1,168,249.96 to all of the Claimants directly in the form of statutory benefits.

53. Based upon Matson's calculation, after subtracting the Retained Limit of $250,000 for each Claimant, Matson has demanded that INA reimburse it in the total amount of $4,077,723.23, which it states is the amount that it has paid to the DOL as Special Fund Assessments, less the Retained Limit for each Claimant.

54. In a second letter sent on August 30, 2013, Matson alleges that its Demand is made in accordance with Endorsement No. 6 of the Excess Policy (the "Endorsement No. 6 Letter"). *See* Letter from Philip L. Pillsbury, Jr. and Richard D. Shively to Kathleen McCreary, dated August 30, 2013, a true and correct copy of which is attached hereto as **Exhibit C**.

55. By letter dated October 7, 2013, INA advised Matson that Section 8 (f) Special Assessments are not covered by the Excess Policy, a true and correct copy of which is attached hereto as **Exhibit D**.

56. INA denied Matson's demand because Matson has not asserted a valid claim for "loss" under the Excess Policy and therefore the Excess Policy provides no coverage.

57. In order for Matson to have suffered a "loss" under the Excess Policy, Matson must have paid "compensation and other benefits" to the Claimants as a result of Matson's adjudicated liability in regard to the injuries sustained by the Claimants.

58. The Special Fund Assessments do not arise from adjudicated liability; they arise as a result of the 1984 formula change for Self Insured Assessments –which formula changes every year.

59. Amounts Matson has paid to the DOL as Special Fund Assessments are not "compensation and other benefits," and therefore are not "losses" under the Excess Policy.

60. Matson has not yet reached the Retained Limit for each Claimant based on the amount of "compensation and other benefits" paid to each Claimant.

61. Additionally, even if Matson's Demand asserted a claim for "loss" under the Excess

Policy—which it does not— Matson's claim is barred by the applicable four (4) year statute of limitations and/or the Notice of Occurrence provisions of the Excess Policy. **Exhibit A**, page 3 at 5. Notice of Occurrence.

62. Under its own theory, Matson's cause of action accrued on the date when the accounts of each Claimant exceeded the self-insured retention amount of $250,000.

63. The attachments to the Demand establish the date when Matson contends each Claimant's account exceeded the self-insured retention amount of $250,000 by including the Special Fund Assessments as follows:

    a. Homer Catt – 1998
    b. Rudy Ceballos – 1991
    c. Joe Comparsi – 1998
    d. Benjamin Duvauchelle – 1997
    e. Hyam Ganish – 2000
    f. Norman Hutchins – 1994
    g. Lyle Hyde – 1994
    h. Randolph Kim-seu – 1996
    i. Alfred Musumeci – 1993
    j. Harry Perry – 2000
    k. Henry Randolph – 1994
    l. Walter Stayart – 1994
    m. Elijah West – 1993

64. The statute of limitations on these claims began to accrue no later than the year 2000, when Matson could have sought indemnification from INA under the theories espoused by Matson here. *See e.g.*, *Nat'l Steel & Shipbuilder Co.*, 959 F. Supp. 2d 1264. Alternatively, Matson was required to provide immediate written notice to INA because each of the Claimants suffered a "disability of more than one year or where it appears reasonably likely that there will be a disability of more than one year." **Exhibit A**, page 3 at 5. Notice of Occurrence.

## VII. COUNT I – DECLARATORY JUDGMENT THAT THE EXCESS POLICY DOES NOT PROVIDE COVERAGE FOR MATSON'S SPECIAL FUND ASSESSMENT PAYMENTS TO THE DEPARTMENT OF LABOR

65. INA incorporates by reference the preceding paragraphs as though fully set forth in this Count I.

66. INA seeks a declaration from this Court that the Excess Policy does not provide coverage for Matson's Special Fund Assessment payments.

67. The Excess Policy covers "losses," in the form of "compensation and other benefits" paid to injured claimants in excess of Matson's $250,000 Retained Limit and up to the $5,000,000 limits of the Excess Policy.

68. The payments made by Matson to the DOL are not "compensation and other benefits" owed to a Claimant, but rather are administrative fees that Matson owes to a governmental agency pursuant to the LHWCA, by virtue of the fact that Matson is self-insured under the LHWCA. Furthermore, section 8(f) of the LHWCA limited Matson's liability for post-injury permanent disability payments to 104 weeks and accordingly Matson had no liability for compensation payments thereafter.

69. Matson's obligation to pay the Special Fund Assessments is not as a result of Matson's adjudicated liability, but rather is the result of the fact that Matson is subject to Special Fund Assessments as a maritime self-insured employer subject to the LHWCA. Matson's Special Fund Assessment payments are not amounts that Matson must pay to a specific employee for a specific injury that occurred during the effective dates of the Excess Policy, and accordingly, these payments are not covered by the Excess Policy. *See e.g.*, *Nat'l Steel & Shipbuilder Co.*, 959 F. Supp. 2d 1264.

70. Alternatively, INA seeks a declaration from this Court that the Demand is barred by the applicable statute of limitations and/or the Notice Provision of the Excess Policy.

## VIII. COUNT II – DECLARATORY JUDGMENT THAT MATSON CANNOT INVOKE ENDORSEMENT NO. 6 THREE DECADES AFTER THE DEPARTMENT OF LABOR DETERMINATIONS OF PERMANENT TOTAL DISABILITY

71. INA incorporates by reference the preceding paragraphs as though fully set forth in this Count II.

72. INA seeks a declaration from this Court that Matson cannot demand further reimbursement pursuant to Endorsement No. 6 because decades have passed since the claimants' final determination of permanent total disability status by the DOL.

73. Matson seems to believe that it can invoke Endorsement No. 6 three decades after the claimants' final determination of permanent total disability status by the DOL.

74. INA disagrees.  Accordingly, this disagreement is suitable for declaratory relief.

## IX. REQUEST FOR RELIEF

WHEREFORE, plaintiff, INA, respectfully requests and prays for the following relief:

a. A declaration that the Excess Policy does not provide coverage for amounts Matson has paid to the Department of Labor in the form of Special Fund Assessments;

b. In the alternative, a declaration that the Demand is barred by the applicable statute of limitations and/or the Notice Provision of the Excess Policy;

c. A declaration that Matson cannot demand further reimbursement pursuant to Endorsement No. 6 because decades have passed since the claimants' final determination of permanent total disability status by the DOL; and

d. A declaration or an award to INA of such other and further relief that this Court deems just, proper and equitable.

Dated: April 29, 2014                                         Respectfully submitted,

**Duane Morris LLP**

By: */s/Ray L. Wong*
Ray L. Wong
Lewis R. Olshin (Pro Hac Vice to be filed)
Attorneys for Plaintiff
CENTURY INDEMNITY COMPANY, as successor to CCI INSURANCE COMPANY, as successor to INSURANCE COMPANY OF NORTH AMERICA